DAVID B. GOLUBCHIK (Sate Bar No. 185520)
KRIKOR J. MESHEFEJIAN (State Bar No. 255030)
JONATHAN D. GOTTLIEB (State Bar No. 339650)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: DBG@LNBYG.COM; KJM@LNBYG.COM; JDG@LNBYG.COM

Proposed attorneys for Hamid R. Rafatjoo
Chapter 11 Trustee

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No.: 2:22-bk-11471-NB |
| CHERRY MAN INDUSTRIES, INC., | Chapter 11 Case |
| Debtor and Debtor in Possession | **CHAPTER 11 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER: (1) APPROVING SALE OF CERTAIN ASSETS LOCATED IN AURORA, ILLINOIS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS PURSUANT TO ASSET PURCHASE AGREEMENT; (2) WAIVING THE 14-DAY STAY PERIOD SET FORTH IN BANKRUPTCY RULE 6004(h); (3) AUTHORIZING PAYMENT OF POST-PETITION RENT CLAIM OF LANDLORD; AND (4) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF HAMID R. RAFATJOO** |
| | Hearing Schedule: |
| | Date:   May 20, 2022 |
| | Time:  8:00 a.m. |
| | Place:  Courtroom 1545 |
| | 255 East Temple Street |
| | Los Angeles, CA 90012 |

Hamid R. Rafatjoo, solely in his capacity as the chapter 11 trustee (the "Trustee") for the estate of Cherry Man Industries, Inc. (the "Debtor"), hereby files this motion ("Motion")[1] for entry of an expedited order of the Court: (1) approving the Trustee's sale of Debtor's ownership interest in certain personal property comprised of racking and miscellaneous equipment (the "Assets") located in a warehouse utilized by the Debtor at 2413 Prospect Drive, Aurora, Illinois (the "Warehouse"), as more particularly described in, and in accordance with, the "Asset Purchase Agreement" ("APA") attached as Exhibit 1 to the annexed Declaration of Hamid R. Rafatjoo, to Apex Warehouse Systems, LLC ("Buyer"), free and clear of all liens, claims, encumbrances and other interests under U.S.C. §363(f); (2) waiving the 14-day stay period set forth in Bankruptcy Rule 6004(h); (3) authorizing the Trustee to use a portion of the proceeds of the sale to pay the post-petition administrative rent obligations of the estate to the Warehouse landlord; and (4) granting related relief.

On May 10, 2022, the Court entered an order approving the appointment of the Trustee. Since his appointment, the Trustee has worked around the clock to, among other things: (1) obtain an understanding of the Debtor's bankruptcy estate, assets, liabilities, and business operations; (2) evaluate the bankruptcy estate's most pressing needs and issues; and (3) take actions necessary to preserve and protect the estate's assets and eliminate unnecessary expenses of the estate. This Motion is the result, and in furtherance of, the Trustee's activities and objectives, and seeks to obtain Court approval of an immediate sale of the Assets located in a Warehouse the estate leases but no longer requires and intends to vacate by May 31, 2022. In order to ensure that the estate does not incur further administrative expenses in the form of rent and other related obligations, it is imperative that the Trustee vacate the Warehouse, and dispose of the personal property located at the Warehouse immediately. A continued hearing on the Debtor's motion to reject the lease

---

[1] This Motion is one of three motions requesting the sale of certain of the Debtor's assets. All three motions are virtually identical except with respect to the assets being sold, asset locations, identity of buyer and the specific terms of sale. This Motion incorporates by reference certain background information and facts that are incorporated by reference, but does not repeat, certain background facts and information set forth only in the *Chapter 11 Trustee's Motion For Entry Of An Order... Approving Sale Of Certain Assets Located In Logan Township, New Jersey* (defined below as the "New Jersey Sale Motion").

of the Warehouse is presently scheduled for May 20, 2022, pursuant to which the Trustee will be requesting the entry of an order deeming the lease of the Warehouse rejected effective as of May 31, 2022.  The Trustee has obtained an offer for the purchase of the Assets which the Trustee believes is fair and reasonable under the circumstances.

Given the relatively short timeframe, and the availability of the buyer now, the Trustee submits that a time and cost intensive marketing process is not feasible, and in order to avoid the loss of this buyer, the proposed sale is not subject to overbid.  However, this sale is not a sale of substantially all of the Debtor's assets, or the Debtor's business.  Rather, this sale is limited solely to certain pallet storage racks and equipment located only in the Warehouse.  Without a sale such as the one proposed herein, the Trustee would likely be required to retain a liquidator to sell the Assets piecemeal at "fire sale" prices, and, if such a liquidation is not successful, to abandon such Assets.  In summary, the proposed sale represents an effective and advantageous solution to the estate's exit from the Warehouse within the short timeframe before the Trustee vacates the Warehouse.  The proceeds of the sale ($500,000) will be set aside and any liens, claims, encumbrances or interests in and to the sold Assets shall attach to the proceeds of the sale with the same validity, extent and priority they had as of the date of the Debtor's bankruptcy filing.  A portion of the proceeds will be used to satisfy the administrative rent obligations of the estate to the landlord of the Warehouse, which was previously approved pursuant to past cash collateral orders.

The Trustee believes that creditors asserting a lien against the Assets will consent to the proposed sale of the Assets to Buyer under the circumstances free and clear of their liens pursuant to section 363(f)(2).

## <u>SUMMARY OF THE TERMS OF THE PROPOSED SALE TO BUYER</u>

Pursuant to the APA[2] with Buyer, and subject to Bankruptcy Court approval:

1.  The Trustee is selling to Buyer, and Buyer has agreed to purchase the estate's right, title and interest in and to all of the Assets.  The Assets will be sold, assigned,

---

[2] Capitalized terms otherwise defined have the same meaning ascribed to such terms in the APA.

transferred and conveyed to Buyer on the Closing Date "as is" and "where is," with no representations or warranties of any kind, free and clear of all liens, claims, encumbrances and interests pursuant to section 363(f) of the Bankruptcy Code.

2. The Assets are listed with specificity in the APA and include teardrop uprights, teardrop beams, row spacers, wire decks, column deflectors and upright shims.[3]

3. The Purchase Price for the Assets is $500,000, payable as follows: (a) Buyer shall pay $50,000 upon the execution of the APA as a deposit which shall be applied toward the Purchase Price; and (b) Buyer shall pay $450,000 at Closing.

4. The Closing shall occur not later than three (3) days after Bankruptcy Court approval of the APA, unless otherwise agreed to by the parties.

**WHEREFORE**, the Trustee respectfully requests that the Court grant this Motion and:

1. Find that notice of this Motion was proper, timely, adequate, appropriate and sufficient;

2. Find good, sufficient, and sound business purposes and justification and compelling circumstances for the Trustee's immediate sale of the Assets to Buyer;

3. Find that the APA was negotiated, proposed and entered into without collusion, in good faith, and from arm's-length bargaining positions and that, to the extent requested by Buyer, Buyer is acting as a good faith purchaser and is, accordingly, entitled to the protections set forth in section 363(m) of the Bankruptcy Code;

4. Find the consideration provided by Buyer for the estate's right, title and interest in and to the Assets to (i) be fair and reasonable, (ii) be the highest or otherwise best offer for the Assets under the circumstances, (iii) provides a greater recovery for the estate's creditors than would be provided by any other practical available alternative under the circumstances, and (iv) constitutes reasonably equivalent value and fair consideration under the circumstances of this case;

---

[3] An internet search of such items will provide interested parties with an idea/examples of what these Assets are comprised of.  In summary, they are pieces that if used together, provide for a pallet racking/storage solution for warehouses.

5.      Find that one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied for selling the assets free and clear of all liens, claims, encumbrances and other interests;

6.      Find that approval of the APA and the consummation of the Trustee's sale of the Assets to Buyer are in the best interests of the Debtor, its creditors, its bankruptcy estate and other parties in interest;

7.      Authorize the Trustee to sell and transfer the estate's right, title and interest in and to the Assets to Buyer free and clear of all liens, claims, encumbrances or other interests of any kind or nature whatsoever other than as provided in the APA;

8.      Authorize the Trustee to perform his obligations under and comply with the terms of the APA, pursuant to and in accordance with the terms and conditions of the APA;

9.      Authorize the Trustee to (a) execute and deliver, and perform under, consummate and implement the APA, (b) execute and deliver, and perform under, all ancillary documents to the APA, and (c) take all further actions as may be reasonably requested by Buyer for the purpose of assigning, transferring, granting, conveying and conferring to Buyer the Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the APA;

10.     Authorize the Trustee to use a portion of the proceeds of the sale to pay the post-petition administrative rent obligations of the estate to the Warehouse landlord;

11.     Waive the 14-day stay period set forth in Bankruptcy Rule 6004(h); and

12.     Grant such other and further relief as the Court deems just and proper under the circumstances of this case.

Date: May 18, 2022

LEVENE, NEALE, BENDER, YOO
& GOLUBCHIK L.L.P.


By:/s/ David B. Golubchik
      DAVID B. GOLUBCHIK
      KRIKOR J. MESHEFEJIAN
      JONATHAN D. GOTTLIEB
Proposed Attorneys for Hamid R. Rafatjoo
Chapter 11 Trustee

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    STATEMENT OF FACTS

**A.    Background Information.**

To avoid repetition, the Trustee references and incorporates herein the Statement of Facts set forth in that certain concurrently filed *Chapter 11 Trustee's Motion For Entry Of An Order… Approving Sale Of Certain Assets Located In Logan Township, New Jersey* (the "New Jersey Sale Motion"). Capitalized terms not otherwise defined in this Background Information section have the same meaning ascribed to such terms in the New Jersey Sale Motion.

The Debtor is a party to a real property lease of the warehouse located at 2413 Prospect Dr., Aurora, Illinois (the "Warehouse"). The Warehouse is subject to the Lease/Contract Rejection Motion. The Trustee's investigation indicates that the Warehouse contains various pallet racking storage equipment owned by the Debtor (defined below as the "Assets"). The Trustee has determined that the rejection of the lease for the Warehouse is appropriate and necessary, and in order to avoid the further accrual of administrative rent claims, the estate should vacate the Warehouse as soon as possible, and dispose of the Debtor's property located at the Warehouse.

A continued hearing on the Debtor's motion to reject the lease of the Warehouse is presently scheduled for May 20, 2022, pursuant to which the Trustee will be requesting the entry of an order deeming the lease of the Warehouse rejected as of May 31, 2022. The Trustee has obtained an offer for the purchase of the Assets which the Trustee believes is fair and reasonable under the circumstances, and given the relatively short time frame between the Trustee's appointment and the anticipated lease rejection date of May 31, 2022.

**B.    The Need To Sell The Assets On An Expedited Basis.**

There is a short window of time for the Trustee to monetize the Assets located at the Warehouse prior to vacating the Warehouse. Moreover, it is critical for the estate to vacate the Warehouse by May 31, 2022 (or thereabouts) to ensure that the estate does not incur further administrative rent expenses in connection with a location that is of no operational or financial benefit to the estate. Given the relatively short timeframe, and the availability of the buyer now, the Trustee submits that a time and cost intensive marketing process is not feasible, and in order

to avoid the loss of this buyer, the proposed sale is not subject to overbid.  However, this sale is not a sale of substantially all of the Debtor's assets, or the Debtor's business.  Rather, this sale is limited solely to certain pallet storage racks and equipment located only in the Warehouse. Without a sale such as the one proposed herein, the Trustee would likely be required to retain a liquidator to sell the Assets piecemeal at "fire sale" prices, and, if such a liquidation is not successful, to abandon such Assets.  In summary, the proposed sale represents an effective and advantageous solution to the estate's exit from the Warehouse within the short timeframe before the Trustee vacates the Warehouse.  The proceeds of the sale ($500,000) will be set aside and any liens, claims, encumbrances or interests in and to the sold Assets shall attach to the proceeds of the sale with the same validity, extent and priority they had as of the date of the Debtor's bankruptcy filing, provided that the Trustee intends to use the sale proceeds to pay the accrued, but unpaid, post-petition administrative rent owed to the landlord of the Warehouse.

**C.    The Proposed Sale.**

The Trustee negotiated the "Asset Purchase Agreement" ("APA") attached as Exhibit "1" to the annexed Declaration of Hamid R. Rafatjoo, with Apex Warehouse Systems, LLC ("Buyer").

Pursuant to the APA[4] with Buyer, and subject to Bankruptcy Court approval:

1.  The Trustee is selling to Buyer, and Buyer has agreed to purchase the estate's right, title and interest in and to all of the Assets.  The Assets will be sold, assigned, transferred and conveyed to Buyer on the Closing Date "as is" and "where is," with no representations or warranties of any kind, free and clear of all liens, claims, encumbrances and interests pursuant to section 363(f) of the Bankruptcy Code.

2.  The Assets are listed with specificity in the APA and include teardrop uprights, teardrop beams, row spacers, wire decks, column deflectors and upright shims.[5]

---

[4] Capitalized terms otherwise defined have the same meaning ascribed to such terms in the APA.
[5] An internet search of such items will provide interested parties with an idea/examples of what these Assets are comprised of.  In summary, they are pieces that if used together, provide for a pallet racking/storage solution for warehouses.

3. The Purchase Price for the Assets is $500,000, payable as follows: (a) Buyer shall pay $50,000 upon the execution of the APA as a deposit which shall be applied toward the Purchase Price; and (b) Buyer shall pay $450,000 at Closing.

4. The Closing shall occur not later than three (3) days after Bankruptcy Court approval of the APA, unless otherwise agreed to by the parties.

## II.    DISCUSSION

### A.    The Bankruptcy Court Should Authorize The Trustee To Sell The Assets To Buyer.

Section 363(b)(1) provides that "[t]he trustee…after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate…." 11 U.S.C. § 363 (b)(1).  To approve a use, sale or lease of property other than in the ordinary course of business, the court must find "some articulated business justification." *See, e.g., In re Martin (Myers v. Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) citing *In re Schipper (Fulton State Bank v. Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991); *Comm. of Equity SEC Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986) (implicitly adopting the "sound business judgment" test of *Lionel Corp.* and requiring good faith); *In re Delaware and Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991) (concluding that the Third Circuit adopted the "sound business judgment" test in the *Abbotts Dairies* decision).

In the Ninth Circuit, "cause" exists for authorizing a sale of estate assets if it is in the best interest of the estate, and a business justification exists for authorizing the sale. *In re Huntington, Ltd.*, 654 F.2d 578 (9th Cir. 1981); *In re Walter*, 83 B.R. 14, 19-20 (9th Cir. B.A.P. 1988).  The Ninth Circuit has also held that section 363 allows the sale of substantially all assets of a debtor's bankruptcy estate after notice and a hearing.  *In re Qintex Entertainment, Inc.*, 950 F.2d 1492 (9th Cir. 1991).

In determining whether a sale satisfies the business judgment standard, courts have held that: (1) there be a sound business reason for the sale; (2) accurate and reasonable notice of the sale be given to interested persons; (3) the sale yield an adequate price (i.e., one that is fair and reasonable); and (4) the parties to the sale have acted in good faith. *Titusville Country Club v.*

*Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *see also, In re Walter*, 83 B.R. at 19-20.

The Trustee submits that its proposed sale of the Property pursuant to the terms of the APA clearly comports with each of these four criteria, and demonstrates that the Debtor's business judgment to proceed with the proposed sale of the Property in accordance with the terms of the APA is sound.

### 1.    **Sound Business Purpose.**

There must be some articulated business justification, other than appeasement of major creditors, for using, selling or leasing property out of the ordinary course of business before the bankruptcy court may order such disposition under Section 363(b). *In re Lionel Corp.,* 722 F.2d at 1070. The Ninth Circuit Bankruptcy Appellate Panel in *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19 (9th Cir. B.A.P. 1988) has adopted a flexible case-by-case test to determine whether the business purpose for a proposed sale justifies disposition of property of the estate under Section 363(b). In *Walter*, the Bankruptcy Appellate Panel, adopting the reasoning of the Fifth Circuit in *In re Continental Airlines, Inc.*, 780 F.2d 1223 (5th Cir. 1986) and the Second Circuit in *In re Lionel Corp.*, *supra*, articulated the standard to be applied under Section 363(b) as follows:

> Whether the proffered business justification is sufficient depends on the case. As the Second Circuit held in <u>Lionel</u>, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the Debtor, creditors and equity holders, alike. He might, for example, look to such relevant facts as the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value. This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge.

*In Re Walter*, 83 B.R. at 19-20, *citing In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986).

The facts pertaining to the Trustee's proposed sale of the Assets clearly substantiate the Trustee's business decision that such contemplated sale serves the best interests of the estate and merits the approval of the Court.

The Assets are located at a Warehouse that is being vacated by the estate and the Assets themselves are of no further business or operational use to the estate. Absent an immediate sale, the Trustee would be forced to abandon the Assets, or remove and store the Assets at great expense to the estate. In order to avoid the incurrence of additional administrative expense, and in order to generate cash in connection with the Assets, the Trustee submits that an immediate sale is necessary, appropriate, and of benefit to the estate. The Trustee therefore submits that his proposed sale is justified by sound business purposes, satisfying the first requirement for a sale under Section 363(b) of the Bankruptcy Code.

**2.    <u>Accurate and Reasonable Notice</u>.**

In connection with a proposed sale under Section 363 of the Bankruptcy Code, "four pieces of information must be presented to the creditors. The notice should: place all parties on notice that the debtor is selling its [assets]; disclose accurately the full terms of the sale; explain the effect of the sale as terminating the debtor's ability to continue in business; and explain why the proposed price is reasonable and why the sale is in the best interest of the estate." *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 180 (D. Del. 1991). A notice is sufficient if it includes the terms and conditions of the sale and if it states the time for filing objections. *In re Karpe*, 84 B.R. 926, 930 (Bankr. M.D. Pa. 1988). The purpose of the notice is to provide an opportunity for objections and hearing before the court if there are objections. *Id.*

At a hearing held on May 17, 2022, the Court ordered pursuant to Rule 2002(a)(2) that the notice of the Motion and the Motion be served only on parties receiving electronic notice of filings in this case.

**3.    <u>Fair and Reasonable Price</u>.**

In order to be approved under Section 363(b) of the Bankruptcy Code, the purchase price must be fair and reasonable. *Coastal Indus., Inc. v. U.S. Internal Revenue Service (In re Coastal Indus., Inc.)*, 63 B.R. 361, 368 (Bankr. N.D. Ohio 1986). Several courts have held that "fair

value" is given for property in a bankruptcy sale when at least 75% of the appraised value of such property is paid.  *See In re Karpe*, 84 B.R. at 933; *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 149 (3d Cir. 1986); *Willemain v. Kivitz*, 764 F.2d 1019 (4th Cir. 1985); *In re Snyder*, 74 B.R. 872, 878 (Bankr. E.D. Pa. 1987); *In re The Seychelles, Partnership and Genius Corp. v. Banyan Corp.*, 32 B.R. 708 (N.D. Tex. 1983).  However, the Trustee also realizes that "the trustee's main responsibility, and the primary concern of the bankruptcy court, is the maximization of the value of the asset sold."  *In re Integrated Resources, Inc.*, 135 B.R. 746, 750 (Bankr. S.D.N.Y. 1992), *aff'd*, 147 B.R. 650 (S.D.N.Y. 1992).  "It is a well-established principle of bankruptcy law that the objective of bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate."  *In re Atlanta Packaging Products, Inc.*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988); *see also In re Wilde Horse Enterprises*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991) ("In any sale of estate assets, the ultimate purpose is to obtain the highest price for the property sold").

The Trustee submits that under the circumstances, the proposed sale to Buyer will generate the highest and best net value to the estate, taking into account the immediate cash that the proposed sale will generate, coupled with the immediate solution to the Trustee's efforts to vacate the Warehouse by May 31, 2022 and cut off any further administrative rent, storage or other claims in connection with the Assets and the Warehouse.  Absent an immediate sale, the estate will continue to incur costs associate with the Assets and Warehouse, or will be forced to abandon the Assets without any value being provided to the estate.  Additionally, a piece-meal fire sale of the Assets will not result in a greater price, according to the Trustee's analysis.  Moreover, the proposed Buyer is in the business of buying and selling storage racks and has the capability and desire to purchase from the estate *all* of the Assets located at the Warehouse.

### 4.    **Good Faith**.

When a bankruptcy court authorizes a sale of assets pursuant to Section 363(b)(1), it is required to make a finding with respect to the "good faith" of the purchaser.  *In re Abbotts Dairies*, 788 F.2d at 149.  Such a procedure ensures that Section 363(b)(1) will not be employed to circumvent the creditor protections of Chapter 11, and as such, it mirrors the requirement of

Section 1129, that the Bankruptcy Court independently scrutinizes the debtor's reorganization

plan and makes a finding that it has been proposed in good faith.  *Id.* at 150.

"Good faith" encompasses fair value, and further speaks to the integrity of the transaction.

*In re Wilde Horse Enterprises*, 136 B.R. at 842.  With respect to a debtor's conduct in conjunction

with the sale, the good faith requirement "focuses principally on the element of special treatment

of the Debtor's insiders in the sale transaction."  *See In re Industrial Valley Refrig. and Air Cond.*

*Supplies, Inc.*, 77 B.R. 15, 17 (Bankr. E.D. Pa. 1987).  Here, the Trustee is proposing to sell the

Gateway Two Property and he is not an "insider" of the Debtors.

With respect to the buyer's conduct, this Court should consider whether there is any

evidence of "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt

to take grossly unfair advantage of other bidders."  *In re Abbotts Dairies*, 788 F.2d at 147; *In re*

*Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978); *In re Wilde Horse Enterprises,*

*Inc.*, 136 B.R. at 842; *In re Alpha Industries, Inc.*, 84 B.R. 703, 706 (Bankr. D. Mont. 1988).  In

short, "[l]ack of good faith is generally determined by fraudulent conduct during the sale

proceedings."  *In re Apex Oil Co.*, 92 B.R. 847, 869 (Bankr. E.D. Mo. 1988), *citing In re*

*Exennium, Inc.*, 715 F.2d 1401, 1404-05 (9th Cir. 1983); *see also In re M Capital Corp.*, 290

B.R. 743 (B.A.P. 9th Cir. 2003).

In *In re Filtercorp, Inc.*, 163 F.3d 570 (9th Cir. 1998), the Ninth Circuit set forth the

following test for determining whether a buyer is a good faith purchaser:

> A good faith buyer "is one who buys 'in good faith' and 'for value.'" [citations
> omitted.]  [L]ack of good faith is [typically] shown by 'fraud, collusion between
> the purchaser and other bidders or the trustee, or an attempt to take grossly unfair
> advantage of other bidders.'" [citations omitted.]

*Filtercorp*, 163 F.3d at 577.

The Ninth Circuit made clear in *Filtercorp* that this standard for determining good faith

is applicable even when the buyer is an insider.  The Trustee is not affiliated with Buyer, and the

Trustee does not believe Buyer is an insider of the Debtor.  Additionally, the APA was negotiated

at arm's length in good faith between the Trustee and Buyer.  Based on the foregoing, the Trustee

submits that the Court should find that the winning bidder constitutes a good faith purchaser

entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

**B.**    **Section 363(f) Of The Bankruptcy Code Permits The Sale Of The Assets To Be Free**

   **And Clear Of Any And All Liens, Claims, Encumbrances, And Interests.**

Section 363(f) of the Bankruptcy Code provides, in relevant part, as follows:

> The [debtor in possession] may sell property under subsection (b) . . . of this section
> free and clear of any interest in such property of an entity other than the estate, only if—
> > (1) applicable non-bankruptcy law permits the sale of such property free and
> > clear of such interest; ...
> > (2) such entity consents;
> > (3) such interest is a lien and the price at which such property is to be sold is
> > greater than the aggregate value of all liens on such property;
> > (4) Such interest is in bona fide dispute; or
> > (5) such entity could be compelled, in a legal or equitable proceeding, to accept
> > a money satisfaction of such interest.

11 U.S.C. § 363(f).

Section 363(f) of the Bankruptcy Code was drafted in the disjunctive.  Thus, a trustee

need only meet the provisions of one of the five subsections of section 363(f) in order for a sale

of property to be free and clear of all liens, encumbrances, claims and other interests (defined

collectively as "Liens") [6].  Section 363(f)(2) of the Bankruptcy Code authorizes a sale to be free

and clear of an interest if the interest holder consents to the sale.  However, the "consent" of an

entity asserting an interest in the property sought to be sold, as referenced in section 363(f)(2) of

the Bankruptcy Code, can be implied if such entity fails to make a timely objection to the sale

after receiving notice of the sale.  *In re Eliot*, 94 B.R. 343, 345 (E.D. Pa. 1988).  Here, the Trustee

---

[6] The Bankruptcy Code does not define the phrase "interest in ... property" for purposes of §
363(f). *See In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 567 B.R. 820, 825 (Bankr. C.D. Cal.
2017).  "The Third Circuit has held that the phrase 'interest in ... property' is 'intended to refer
to obligations that are connected to, or arise from, the property being sold.' *Folger Adam Sec.,
Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252, 259 (3d Cir. 2000). That conclusion is echoed
by *Collier on Bankruptcy*, which observes a trend in caselaw 'in favor of a broader definition
[of the phrase] that encompasses other obligations that may flow from ownership of the
property.' 3 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 363.06[1] (16th ed.
2017)." *Id.*

believes that under the circumstances, holders of Liens (Cathay Bank, and the United States Small Business Administration) will consent to the sale of the Assets to Buyer.

**C.** **The Trustee Requests the Court to Waive the Fourteen-Day Waiting Period Set Forth in Bankruptcy Rule 6004(h).**

Bankruptcy Rule 6004(h) provides, among other things, that an order authorizing the use, sale or lease of property . . . is stayed until the expiration of fourteen days after entry of the Court order, unless the Court orders otherwise.

The Closing under the APA is designated to be within three days after approval of the APA, and for all of the reasons set forth above, is scheduled to occur prior to or on May 31, 2022. In order to facilitate the most expeditious Closing possible, the Trustee requests that the order approving this Motion be effective immediately upon entry by providing that the fourteen-day waiting period of Bankruptcy Rule 6004(h) is waived.

## III.    CONCLUSION

**WHEREFORE**, the Trustee respectfully requests that the Court grant this Motion and, among other things:

1.     Find that notice of this Motion was proper, timely, adequate, appropriate and sufficient;

2.     Find good, sufficient, and sound business purposes and justification and compelling circumstances for the Trustee's immediate sale of the Assets to Buyer;

3.     Find that the APA was negotiated, proposed and entered into without collusion, in good faith, and from arm's-length bargaining positions and that, to the extent requested by Buyer, Buyer is acting as a good faith purchaser and is, accordingly, entitled to the protections set forth in section 363(m) of the Bankruptcy Code;

4.     Find the consideration provided by Buyer for the estate's right, title and interest in and to the Assets to (i) be fair and reasonable, (ii) be the highest or otherwise best offer for the Assets under the circumstances, (iii) provides a greater recovery for the estate's creditors than would be provided by any other practical available alternative under the circumstances, and (iv)

constitutes reasonably equivalent value and fair consideration under the circumstances of this case;

5. Find that one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied for selling the assets free and clear of all liens, claims, encumbrances and other interests;

6. Find that approval of the APA and the consummation of the Trustee's sale of the Assets to Buyer are in the best interests of the Debtor, its creditors, its bankruptcy estate and other parties in interest;

7. Authorize the Trustee to sell and transfer the estate's right, title and interest in and to the Assets to Buyer free and clear of all liens, claims, encumbrances or other interests of any kind or nature whatsoever other than as provided in the APA;

8. Authorize the Trustee to perform his obligations under and comply with the terms of the APA, pursuant to and in accordance with the terms and conditions of the APA;

9. Authorize the Trustee to (a) execute and deliver, and perform under, consummate and implement the APA, (b) execute and deliver, and perform under, all ancillary documents to the APA, and (c) take all further actions as may be reasonably requested by Buyer for the purpose of assigning, transferring, granting, conveying and conferring to Buyer the Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the APA;

10. Authorize the Trustee to use a portion of the proceeds of the sale to pay the post-petition administrative rent obligations of the estate to the Warehouse landlord;

11. Waive the 14-day stay period set forth in Bankruptcy Rule 6004(h); and

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

12.     Grant such other and further relief as the Court deems just and proper under the circumstances of this case.

Date: May 18, 2022                              LEVENE, NEALE, BENDER, YOO
                                               & GOLUBCHIK L.L.P.


                                               By:/s/ David B. Golubchik
                                                   DAVID B. GOLUBCHIK
                                                   KRIKOR J. MESHEFEJIAN
                                                   JONATHAN D. GOTTLIEB
                                               Proposed Attorneys for Hamid R. Rafatjoo
                                               Chapter 11 Trustee

### DECLARATION OF HAMID R. RAFATJOO

I, Hamid R. Rafatjoo, hereby declare as follows:

1.      I am the chapter 11 trustee ("Trustee") appointed in the bankruptcy case of Cherry Man Industries, Inc. (the "Debtor").  I make this Declaration in support of the attached motion ("Motion") to sell the Debtor's ownership interest in certain personal property comprised of racking and miscellaneous equipment (the "Assets") located in  warehouse utilized by the Debtor at 2413 Prospect Dr., Aurora, Illinois (the "Warehouse"), as more particularly described in, and in accordance with, the "Asset Purchase Agreement" ("APA") attached as Exhibit 1 to this Declaration, to Apex Warehouse Systems, LLC ("Buyer"), free and clear of all liens, claims, encumbrances and other interests under U.S.C. §363(f).

2.      I have personal knowledge of the facts set forth in this Declaration and if called as a witness, could and would testify competently with respect thereto. I incorporate herein by this reference my Declaration filed in support of the *Chapter 11 Trustee's Motion Chapter 11 Trustee's Motion For Entry Of An Order… Approving Sale Of Certain Assets Located In Logan Township, New Jersey* (the "New Jersey Sale Motion").

3.      The Warehouse is subject to the Lease/Contract Rejection Motion.   My investigation indicates that the Warehouse contains various pallet racking storage equipment owned by the Debtor (defined below as the "Assets").  I have determined that the rejection of the lease for the Warehouse is appropriate and necessary, and in order to avoid the further accrual of administrative rent claims, the estate should vacate the Warehouse as soon as possible, and dispose of the Debtor's property located at the Warehouse.

4.      A continued hearing on the Debtor's motion to reject the lease of the Warehouse is presently scheduled for May 20, 2022, pursuant to which I will be requesting the entry of an order deeming the lease of the Warehouse rejected as of May 31, 2022.  I have obtained an offer for the purchase of the Assets which I believe is fair and reasonable under the circumstances, and given the relatively short time frame between my appointment and the anticipated lease rejection date.

5.      There is a short window of time for me to monetize the Assets located at the Warehouse prior to vacating the Warehouse.  Moreover, it is critical for the estate to vacate the Warehouse by May 31, 2022 (or thereabouts) to ensure that the estate does not incur further administrative rent expenses in connection with a location that is of no operational or financial benefit to the estate.  Given the relatively short timeframe, and the availability of the buyer now, I submit that a time and cost intensive marketing process is not feasible, and in order to avoid the loss of this buyer, the proposed sale is not subject to overbid.  However, this sale is not a sale of substantially all of the Debtor's assets, or the Debtor's business.  Rather, this sale is limited solely to certain pallet storage racks and equipment located only in the Warehouse.  Without a sale such as the one proposed herein, I would likely be required to retain a liquidator to sell the Assets piecemeal at "fire sale" prices, and, if such a liquidation is not successful, to abandon such Assets. In summary, the proposed sale represents an effective and advantageous solution to the estate's exit from the Warehouse within the short timeframe before the estate vacates the Warehouse. The proceeds of the sale ($500,000) will be set aside and any liens, claims, encumbrances or interests in and to the sold Assets shall attach to the proceeds of the sale with the same validity, extent and priority they had as of the date of the Debtor's bankruptcy filing, provided that I intend to use the sale proceeds to pay the accrued, but unpaid, post-petition administrative rent owed to the landlord of the Warehouse.

6.      I negotiated the APA with Buyer.

7.      The Assets are located at a Warehouse that is being vacated by the estate and the Assets themselves are of no further business or operational use to the estate.  Absent an immediate sale, I would be forced to abandon the Assets, or remove and store the Assets at great expense to the estate.  In order to avoid the incurrence of additional administrative expense, and in order to generate cash in connection with the Assets, I respectfully submit that an immediate sale is necessary, appropriate, and of benefit to the estate.

8.      I submit that under the circumstances, the proposed sale to Buyer will generate the highest and best net value to the estate, taking into account the immediate cash that the proposed sale will generate, coupled with the immediate solution to our efforts to vacate the Warehouse by

May 31, 2022 and cut off any further administrative rent, storage or other claims in connection with the Assets and the Warehouse.  Absent an immediate sale, the estate will continue to incur costs associate with the Assets and Warehouse, or will be forced to abandon the Assets without any value being provided to the estate.  Additionally, a piece-meal fire sale of the Assets will not result in a greater price.  Moreover, the proposed Buyer is in the business of buying and selling storage racks and has the capability and desire to purchase from the estate *all* of the Assets located at the Warehouse.

9.    I am not affiliated with Buyer, and I do not believe Buyer is an insider of the Debtor. Additionally, the APA was negotiated at arm's length in good faith between me and Buyer.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.  Executed this 17th day of May, 2022 at Orange County, California.


_____

HAMID R. RAFATJOO

# EXHIBIT "1"

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (the "***Agreement***") is made as of May ___, 2022 (the "***Effective Date***"), by and between Hamid Rafatjoo, Chapter 11 Trustee of the estate of Cherry Man Industries, Inc. (the "***Seller***"), and Apex Warehouse Systems, LCC (the "***Buyer***").

## RECITALS

A.    Cherry Man Industries, Inc. is a debtor ("***Debtor***") in a pending Chapter 11 bankruptcy case, Case No. 2:22-bk-11471-NB (the "***Case***").

B.    Pursuant to an order entered on May 10, 2022, Hamid Rafatjoo was appointed as the Chapter 11 Trustee in the Case.

C.    Among the assets of the Debtor are racking and miscellaneous equipment located in a warehouse utilized by the Debtor located at 2413 Propest Dr., Aurora, IL (the "***Warehouse***").

D.    The Debtor filed a motion to reject the lease for the Warehouse and move out.

E.    The remaining assets in the Warehouse (the "***Assets***"), which are the subject of this Agreement are the following:

| | |
|---|---|
| 1478 | 42"D x 288" Teardrop uprights, 3x1-5/8" column, 12,800# cap @ 72"H beam spacing |
| 5096 | 96 x 3-1/4 teardrop beams, 3040# cap. Per pair |
| 5228 | 96 x 3-3/4 teardop beams, 4290# cap. Per pair |
| 176 | 144" x 4-1/2" teardrop beams, 3410# cap. Per pair |
| 0 | 144" x 4-1/4" teardrop beams, 3410# cap. Per pair |
| 496 | 144" x 5-1/4" teardrop beams, 4620# cap. Per pair |
| 1440 | 12" Row Spacers |
| 627 | 18" Row Spacers |
| 11332 | 42 x 46 Wire Deck, Double Waterfall, 2200lb cap., 2.5" x 4" Mesh |
| 1478 | 12" column deflectors |
| 1478 | Upright Shims |

F.    Seller desires to sell to Buyer, and Buyer desires to purchase from Seller the Assets on the terms and conditions set forth in this Agreement, subject to approval of the Bankruptcy Court presiding over the Case.

NOW, THEREFORE, in consideration of the above recitals and the mutual covenants hereinafter set forth, subject to approval of the Bankruptcy Court, Buyer and Seller hereby agree as follows:

## 1.    PURCHASE AND SALE OF ASSETS.

**1.1    Agreement to Sell and Purchase Assets.** Subject to the terms and conditions of this Agreement, and approval of the Bankruptcy Court, Seller agrees to sell, assign, transfer and convey to Buyer at the Closing (as defined in Section 2.2 below), and Buyer agrees to purchase

and acquire from Seller at the Closing, all of Seller's right, title and interest in and to all of the Assets. The Assets will be sold, assigned, transferred and conveyed to Buyer on the Closing Date "as is" and "where is", with no representations or warranties of any kind.

**1.2** **Assets Defined.** As used in this Agreement, the term "*Assets*" means, collectively, Seller's right, title and interest in and to the following assets:

| | |
|---|---|
| 1478 | 42"D x 288" Teardrop uprights, 3x1-5/8" column, 12,800# cap @ 72"H beam spacing |
| 5096 | 96 x 3-1/4 teardrop beams, 3040# cap. Per pair |
| 5228 | 96 x 3-3/4 teardop beams, 4290# cap. Per pair |
| 176 | 144" x 4-1/2" teardrop beams, 3410# cap. Per pair |
| 0 | 144" x 4-1/4" teardrop beams, 3410# cap. Per pair |
| 496 | 144" x 5-1/4" teardrop beams, 4620# cap. Per pair |
| 1440 | 12" Row Spacers |
| 627 | 18" Row Spacers |
| 11332 | 42 x 46 Wire Deck, Double Waterfall, 2200lb cap., 2.5" x 4" Mesh |
| 1478 | 12" column deflectors |
| 1478 | Upright Shims |

Buyer shall promptly execute and deliver to Seller any and all such further assignments and other documents as Seller may reasonably request for the purpose of effectuating the terms and conditions of this Section.

**1.3** **Asset Transfer; Passage of Title; Delivery.**

(a)    Title Passage.  Except as otherwise provided in this Section, upon the Closing, title to all of the Assets shall pass to Buyer, and Seller shall make available to Buyer possession of all of the Assets, and shall further, upon Buyer's request, execute assignments, conveyances and/or bills of sale reasonably requested to convey to Buyer title to all the Assets, as well as such other instruments of conveyance as counsel for Buyer may reasonably deem necessary to effect or evidence the transfers contemplated hereby.

(b)    Removal of Assets.  On the Closing Date, Seller shall make available to Buyer possession of the Assets, *provided however,* that the expenses of retrieving, removing and transferring the Assets shall be borne exclusively by Buyer. The Assets are being sold on an "as is," "where is," "with all faults" bases with no representations and warranties from the Seller. Seller is not providing any technical assistance, actions or support which may be necessary for the Assets, all of which are the sole responsibility and obligation of the Buyer, and at the sole costs of the Buyer. On the Closing Date, Seller shall provide to Buyer access to the Warehouse to remove and relocate the Assets. All Assets must be removed and the Warehouse left in clean broom swept condition by not later than May 31, 2022, after which time Buyer shall be solely responsible for rent and expenses related to the Warehouse.  Prior to the commencement of removal of the Assets, Buyer will provide to Seller a copy of Buyer's insurance policy in an amount sufficient to provide adequate protection for the removal of the Assets from the Warehouse.

**2.      PURCHASE PRICE; PAYMENTS.**

      **2.1      Purchase Price.**  In consideration of the sale, transfer, conveyance and assignment of all the Assets to Buyer at the Closing, Buyer shall, as of the Closing, pay $500,000.00 (U.S. Dollars) (the "*Purchase Price*") to the Seller on the following terms:

          (a) $50,000 upon execution of this Agreement as a deposit for the transaction which will be non-refundable unless the Bankruptcy court does not approve this Agreement; and

          (b) Balance of $450,000 at Closing.

      **2.2      Closing.**  The consummation of the purchase and sale of the Assets contemplated hereby will take place at a closing to be held at the offices of the Seller (the "*Closing*"), not later than three (3) days after approval of this Agreement by the Bankruptcy Court (the "*Closing Date*"), or at such other time or date, and at such place, or by such other means of exchanging documents, as may be agreed to by the parties hereto.

**3.      REPRESENTATIONS AND WARRANTIES OF BUYER.**

      Buyer hereby represents and warrants to Seller that all the following statements are true, accurate and correct:

      **3.1      Due Organization.**  Buyer is a corporation duly organized, validly existing, and in good standing under the laws of Illinois. Buyer has all necessary power and authority to enter into this Agreement and all other documents that Buyer is required to execute and deliver hereunder.

      **3.2      Power and Authority; No Default.**  Buyer has all requisite power and authority to enter into and deliver this Agreement and to perform its obligations hereunder. The signing, delivery and performance by Buyer of this Agreement, and the consummation of all the transactions contemplated hereby, have been duly and validly authorized by Buyer. This Agreement, when signed and delivered by Buyer, will be duly and validly executed and delivered and will be the valid and binding obligation of Buyer, enforceable against Buyer in accordance with its terms, subject to the laws relating to bankruptcy, insolvency and relief of debtors, and rules and laws governing specific performance, injunctions, relief and other equitable remedies.

      **3.3      Authorization for this Agreement.**  No authorization, approval, consent of, or filing with any governmental body, department, bureau, agency, public board, authority or other third party is required for the consummation by Buyer of the transactions contemplated by this Agreement.

      **3.4      Taxes.**  Buyer shall be solely responsible for any and all taxes, including, without limitation, sales taxes, if required, with respect to this Agreement and the transaction contemplated thereby.

**4.      REPRESENTATIONS AND WARRANTIES OF SELLER.**

Seller represents and warrants to Buyer that all of the following statements are true, accurate and correct:

**4.1** **Standing.** Seller is the duly appointed and acting Chapter 11 Trustee of the Debtor's estate in the Case.

**4.2** **Power and Authority; No Default Upon Transfer.** Subject to approval of the Bankruptcy Court, Seller has all requisite power and authority to enter into and deliver this Agreement and to perform its obligations hereunder. The signing, delivery and performance by Seller of this Agreement, and the consummation of all the transactions contemplated hereby, have been duly and validly authorized by Seller. This Agreement, when signed and delivered by Seller, will be duly and validly executed and delivered and will be, subject to approval of the Bankruptcy Court, the valid and binding obligation of Seller, enforceable against Debtor's estate in accordance with its terms as governed by applicable law, regulations and rules.

**4.3** **Access To Warehouse.** Seller shall provide to Buyer access to the Warehouse in accordance with Section 1.3(b) above to dismantle and remove the Assets for a period of up to 21 days after the Closing. Access shall be provided for 12 hours per day, 7 days per week.

**4.4** **Title.** To the best of Seller's knowledge after reasonable inquiry, the Debtor's estate has good and marketable title to all of the Assets. Seller sells, assigns, transfers and conveys the Assets to Buyer "as is" and "where is", with no representations or warranties, including, without limitation, as to merchantability, fitness or use.

(a) **AS-IS SALE; DISCLAIMERS; RELEASE. IT IS UNDERSTOOD AND AGREED THAT, UNLESS EXPRESSLY STATED HEREIN, SELLER IS NOT MAKING AND HAS NOT AT ANY TIME MADE ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND OR CHARACTER, EXPRESS OR IMPLIED, WITH RESPECT TO THE ASSETS, INCLUDING BUT NOT LIMITED TO, ANY WARRANTIES OR REPRESENTATIONS AS TO MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**

(b) **BUYER ACKNOWLEDGES AND AGREES THAT UPON CLOSING, SELLER SHALL SELL AND CONVEY TO BUYER AND BUYER SHALL ACCEPT THE ASSETS "AS IS, WHERE IS, WITH ALL FAULTS." BUYER HAS NOT RELIED AND WILL NOT RELY ON, AND SELLER IS NOT LIABLE FOR OR BOUND BY, ANY EXPRESS OR IMPLIED WARRANTIES, GUARANTEES, STATEMENTS, REPRESENTATIONS OR INFORMATION PERTAINING TO THE PURCHASED ASSETS OR RELATING THERETO MADE OR FURNISHED BY SELLER OR ITS REPRESENTATIVES, TO WHOMEVER MADE OR GIVEN, DIRECTLY OR INDIRECTLY, ORALLY OR IN WRITING, EXCEPT AS EXPRESSLY STATED HEREIN. BUYER ALSO ACKNOWLEDGES THAT THE PRICE REFLECTS AND TAKES INTO ACCOUNT THAT THE ASSETS ARE BEING SOLD "AS IS, WHERE IS, WITH ALL FAULTS."**

(c)    **BUYER ACKNOWLEDGES TO SELLER THAT BUYER HAS HAD THE OPPORTUNITY TO CONDUCT SUCH INSPECTIONS AND INVESTIGATIONS OF THE ASSETS AS BUYER DEEMS NECESSARY OR DESIRABLE TO SATISFY ITSELF AS TO THE ASSETS AND ITS ACQUISITION THEREOF. BUYER FURTHER WARRANTS AND REPRESENTS TO SELLER THAT BUYER WILL RELY SOLELY ON ITS OWN REVIEW AND OTHER INSPECTIONS AND INVESTIGATIONS IN THIS TRANSACTION AND NOT UPON THE INFORMATION PROVIDED BY OR ON BEHALF OF DEBTOR, SELLER, OR THEIR AGENTS, EMPLOYEES OR REPRESENTATIVES WITH RESPECT THERETO.**

5.    <u>**CONDITIONS TO CLOSING.**</u>

**5.1**    <u>**Conditions to Buyer's Obligations.**</u>   The obligations of Buyer hereunder shall be subject to the satisfaction and fulfillment of each of the following conditions, except as Buyer may expressly waive the same in writing:

(a)    Approval of this Agreement by the Bankruptcy Court.

(b)    Seller shall have made the Assets available to Buyer.

(c)    Seller shall have made access to the Warehouse to remove the Assets available to Buyer.

**6.2**    <u>**Conditions to Seller's Obligations.**</u>   The obligations of Seller hereunder shall be subject to the satisfaction and fulfillment of each of the following conditions, except as Seller may expressly waive the same in writing:

(a)    Buyer shall have complied in all material respects with, and shall have fully performed, the terms, conditions, covenants and obligations of this Agreement imposed thereon to be performed or complied with by Buyer at, or prior to, the Closing Date.

(b)    Buyer shall have timely paid the Deposit ($50,000).

(c)    Buyer shall have timely paid the balance of the Purchase Price.

7.    <u>**CLOSING OBLIGATIONS.**</u>

**7.1**    <u>**Buyer's Closing Obligations.**</u>   At the Closing, Buyer shall deliver to Seller the balance of the Purchase Price.

**7.2**    <u>**Seller's Closing Obligations.**</u>   At the Closing, Seller shall deliver to Buyer the following:

(a)    Access to the Assets;
(b)    Access to the Warehouse; and

(c)    Copy of the Bankruptcy Court's order approving this Agreement.

## 8.    **MISCELLANEOUS**.

**8.1**    **Expenses**.  Each of the parties hereto shall bear its own expenses (including without limitation attorneys' fees) in connection with the negotiation and consummation of the transaction contemplated hereby.

**8.2**    **Notices**.  Any notice under this Agreement shall be in writing and shall be personally or sent by certified or registered United States mail, postage prepaid, or sent by nationally recognized overnight express courier or email and addressed as follows:

(a)    If to Seller:

With copy to:

(b)    If to Buyer:

With copy to:

**8.3**    **Entire Agreement.**  This Agreement and any agreements to be executed and delivered in connection herewith, together constitute the entire agreement and understanding between the parties and there are no agreements or commitments with respect to the transactions contemplated herein except as set forth in this Agreement.  This Agreement supersedes any prior offer, agreement or understanding between the parties with respect to the transactions contemplated hereby.

**8.4**    **Amendment; Waiver.**  Any term or provision of this Agreement may be amended only by a writing signed by Seller and Buyer.  The observance of any term or provision of this Agreement may be waived (either generally or in a particular instance and either retroactively or prospectively) only by a writing signed by the party to be bound by such waiver.  No waiver by a party of any breach of this Agreement will be deemed to constitute a waiver of any other breach or any succeeding breach.

**8.5**    **No Third Party Beneficiaries.**  Nothing expressed or implied in this Agreement is intended, or shall be construed, to confer upon or to give any person, firm or corporation, other than the parties hereto, any rights or remedies under or by reason of this Agreement.

**8.6**     **Execution in Counterparts.**  For the convenience of the parties, this Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

**8.7**     **Benefit and Burden.**  This Agreement shall be binding upon, shall inure to the benefit of, and be enforceable by and against, the parties hereto and their respective successors and permitted assigns.

**8.8**     **Governing Law.**  This Agreement shall be governed by and construed in accordance with the internal laws of the State of California (excluding application of any choice of law doctrines that would make applicable the law of any other state or jurisdiction) and, where appropriate, applicable federal law.  Venue shall be before the Bankruptcy Court presiding over the Case.

**8.9**     **Severability.**  If any provision of this Agreement is for any reason and to any extent deemed to be invalid or unenforceable, then such provision shall not be voided but rather shall be enforced to the maximum extent then permissible under then applicable law and so as to reasonably effect the intent of the parties hereto, and the remainder of this Agreement will remain in full force and effect.

**8.10**     **Attorneys' Fees.**  Should a suit or arbitration be brought to enforce or interpret any provision of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees to be fixed in amount by the Court or the Arbitrator(s) (including without limitation costs, expenses and fees on any appeal).  The prevailing party will be entitled to recover its costs of suit or arbitration, as applicable, regardless of whether such suit or arbitration proceeds to a final judgment or award.

    **IN WITNESS WHEREOF**, Buyer and Seller executed and delivered this Agreement by their duly authorized representatives as of the Effective Date.

**SELLER:**                                      **BUYER:**

HAMID RAFATJOO,                        APEX WAREHOUSE SYSTEMS, LCC
Chapter 11 Trustee for the Estate of
Cherry Man Industries, Inc.

By: _____         By: _____
    Hamid Rafatjoo, solely in his capacity       Peter J. DeHaan, Its Owner and
    As Chapter 11 Trustee                         Authorized Agent

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034.

A true and correct copy of the foregoing document entitled **CHAPTER 11 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER: (1) APPROVING SALE OF CERTAIN ASSETS LOCATED IN AURORA, ILLINOIS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS PURSUANT TO ASSET PURCHASE AGREEMENT; (2) WAIVING THE 14-DAY STAY PERIOD SET FORTH IN BANKRUPTCY RULE 6004(h); (3) AUTHORIZING PAYMENT OF POST-PETITION RENT CLAIM OF LANDLORD; AND (4) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF HAMID R. RAFATJOO** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 18, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Michael Jay Berger    michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com**
- **Dustin P Branch    branchd@ballardspahr.com, carolod@ballardspahr.com;hubenb@ballardspahr.com**
- **Ronald K Brown    ron@rkbrownlaw.com**
- **Steve Burnell    sburnell@sulmeyerlaw.com, sburnell@ecf.courtdrive.com;sburnell@ecf.inforuptcy.com;mviramontes@sulmeyerlaw.com**
- **Steven P Chang    heidi@spclawoffice.com, schang@spclawoffice.com,assistant1@spclawoffice.com,attorney@spclawoffice.com;g9806@notify.cincompass.com;changsr75251@notify.bestcase.com**
- **Glen Dresser    gombd@aol.com**
- **Alan W Forsley    alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy.flores@flpllp.com**
- **Todd S Garan    ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com**
- **David B Golubchik    dbg@lnbyg.com, stephanie@lnbyb.com**
- **Michael J Gomez    mgomez@frandzel.com, dmoore@frandzel.com**
- **Asa S Hami    ahami@sulmeyerlaw.com, pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;ahami@ecf.inforuptcy.com**
- **Eric D. Houser    scleere@houser-law.com**
- **David S Kupetz    David.Kupetz@lockelord.com, dperez@sulmeyerlaw.com;dperez@ecf.courtdrive.com;dkupetz@ecf.courtdrive.com**
- **Christopher J Langley    chris@slclawoffice.com, omar@slclawoffice.com;langleycr75251@notify.bestcase.com**
- **Dare Law    dare.law@usdoj.gov, ron.maroko@usdoj.gov**
- **Elan S Levey    elan.levey@usdoj.gov, julie.morales@usdoj.gov**
- **Peter W Lianides    plianides@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com**
- **Krikor J Meshefejian    kjm@lnbyg.com**
- **Hamid R Rafatjoo    hrafatjoo@raineslaw.com, bclark@raineslaw.com**
- **Victor A Sahn    vsahn@sulmeyerlaw.com, pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;vsahn@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;cblair@ecf.inforuptcy.com**

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

- **Zev Shechtman    zshechtman@DanningGill.com,
  danninggill@gmail.com;zshechtman@ecf.inforuptcy.com**
- **Louis F Solimine    Louis.Solimine@thompsonhine.com**
- **Laurie A Spindler    laurie.spindler@lgbs.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**
- **Gerrick Warrington    gwarrington@frandzel.com, sking@frandzel.com**
- **Eric R Wilson    kdwbankruptcydepartment@kelleydrye.com,
  MVicinanza@ecf.inforuptcy.com**

**2.  SERVED BY UNITED STATES MAIL**: On **May 18, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

*None.*

☐ *Service information continued on attached page*

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 18, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

*None.*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 18, 2022 | Lourdes Cruz | */s/ Lourdes Cruz* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.